UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LB ARTS SPRL,

                              Plaintiff,

            - against -

HEIDI NEUHOFF, individually,
HEIDI NEUHOFF INTERNATIONAL
FINE ARTS, INC., NEUHOFF-EDELMAN
GALLERY LLC, HEIDI NEUHOFF
GALLERY, INC. and H.N. GALLERY, INC.,

                              Defendants.

Case No. 08 Civ. 3726 (SWK)

**COMPLAINT**

**ECF CASE**

**Trial by Jury Demanded**

        Plaintiff LB Arts Sprl ("LB Arts"), by its attorneys, Eaton & Van Winkle LLP, as

and for its complaint in the above-entitled action, hereby alleges as follows:

### PARTIES

        1.    LB Arts is a limited liability company organized under the laws of Belgium, with

its principal place of business at Avenue Emile Duray, 32, B – 1050 Brussels, Belgium.

        2.    Defendant Heidi Neuhoff ("Ms. Neuhoff") is an individual who is a citizen of a

state of the United States, residing at 850 Seventh Avenue, Suite 1205, New York, New

York 10019-5230.

        3.    Upon information and belief, Defendant Heidi Neuhoff International Fine Arts,

Inc. is a Delaware corporation registered to do business in the State of New York with a

principal place of business at 41 East 57th Street, New York, New York 10022.

        4.    Upon information and belief, Defendant Neuhoff-Edelman Gallery LLC is a

domestic corporation registered to do business in the State of New York with a principal

place of business at 41 East 57th Street, New York, New York 10022.

        5.    Upon information and belief, Defendant Heidi Neuhoff Gallery, Inc. is a

domestic corporation with a principal place of business at 41 East 57th Street, New York, New York 10022.

6.     Upon information and belief, Defendant H.N. Gallery, Inc. is a domestic corporation with a principal place of business at 41 East 57th Street, New York, New York 10022.

7.     Upon information and belief, Defendant Heidi Neuhoff International Fine Arts, Inc. is the successor in interest to Defendant Heidi Neuhoff Gallery, Inc. and Defendant H.N. Gallery, Inc.

8.     Upon information and belief, Defendant Neuhoff-Edelman Gallery LLC is the successor in interest to Defendant Heidi Neuhoff Gallery, Inc. and Defendant H.N. Gallery, Inc.

9.     At all relevant times, the corporate defendants have presented themselves to the public and to LB Arts as a single business entity owned and operated by Ms. Neuhoff doing business as the Neuhoff Gallery (hereinafter collectively referred to as the "Neuhoff Gallery").

## JURISDICTION AND VENUE

10.    The Court has subject matter jurisdiction over the state law claims asserted in this action based on diversity of citizenship pursuant to 28 U.S.C. §1332(a) because the matter in controversy (a) exceeds the sum or value of $75,000, exclusive of interest and costs, and (b) is between a citizen or subject of a foreign State, on one side, and citizens of States of the United States on the other side.

11.    The Court has subject matter jurisdiction over the remaining claim asserted in this action pursuant to 28 U.S.C. §1331 and 18 U.S.C. § 1964(c).

12.    This District is a proper venue for this action pursuant to 28 U.S.C. §1391 because the Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS

### Background

13.    At all relevant times, the Neuhoff Gallery has operated as an art gallery.

14.    At all relevant times, upon information and belief, Ms. Neuhoff has held a majority ownership interest in the Neuhoff Gallery.

15.    At all relevant times, upon information and belief, Ms. Neuhoff has controlled, managed and operated the Neuhoff Gallery.

16.    Ms. Hanneke Beaumont is a sculptor and the majority shareholder and general manager of LB Arts, through which sales of her artwork are made.

17.    The Neuhoff Gallery and LB Arts had a consignment relationship, having done business together since 1996.

18.    In connection with an exposition of LB Arts artwork to be held by the Neuhoff Gallery in New York City in 1996, it was agreed by LB Arts and the Neuhoff Gallery that the Neuhoff Gallery would choose the pieces to be exhibited (and offered for sale on consignment), and LB Arts was to receive a piece-specific, previously agreed-upon price for each piece sold (regardless of the onward sale price received by the Neuhoff Gallery from any third party purchaser).

19.    In connection with the exposition, it was agreed that the Neuhoff Gallery would advise LB Arts on a weekly basis of all sales.  It was also agreed that, upon such notification, LB Arts was to then invoice the Neuhoff Gallery for its price for the piece

and payment was to be made within 30 days of the issuance of the invoice.

20.    LB Arts also granted the Neuhoff Gallery exclusive rights to promote and sell LB Arts artwork in the United States.  Thus, with respect to sales occurring after the conclusion of the exposition, it remained incumbent upon the Neuhoff Gallery to promptly advise LB Arts that a piece of artwork had been sold to a third party purchaser in order for LB Arts to issue an invoice.

**The Neuhoff Gallery's Dilatory and Fraudulent Conduct, Affirmative Misrepresentations and Active Concealment**

21.    Over the course of the parties' relationship, LB Arts supplied the Neuhoff Gallery with over 170 pieces of artwork to be sold on consignment.

22.    Since at least 2002, the Neuhoff Gallery consistently failed to report a portion of its sales of LB Arts artwork.

23.    Most of the unreported sales were ultimately reported to LB Arts only in late 2006-2007 when LB Arts requested the return of what it reasonably believed to be "Dead Stock" (defined below), in some instances more than four years after the actual date of sale by the Neuhoff Gallery.

24.    Even with respect to the artwork which had been declared sold, and where the Neuhoff Gallery advised LB Arts that it could invoice the work (which in practice meant that the Neuhoff Gallery had already been paid by its client), the Neuhoff Gallery rarely paid LB Arts' invoices promptly after issuance thereof.  Although payment terms were 30 days from the date of the LB Arts invoice, payment generally took not less than 3-4 months, and often as much as a year.

25.    At various times, LB Arts communicated to the Neuhoff Gallery its concerns that the Neuhoff Gallery's inventory of LB Arts artwork had become costly and

excessive, the Neuhoff Gallery's promotional efforts were inadequate and sales were languishing, and the Neuhoff Gallery's habitually late payment for reported sales was unacceptable.

26.   In a July 20, 2006 email to the Neuhoff Gallery, LB Arts raised the issue of not having received any sales report information in over five months, although it had been agreed that quarterly inventories would be supplied and such quarterly inventories had previously been supplied.

27.   In the July 20, 2006 email, LB Arts also raised the issue of the "Dead Stock" and requested the return, by September 15, 2006, of nine purportedly unsold pieces that had been held on consignment by the Neuhoff Gallery since 1997-98 and five purportedly unsold pieces which had been held since the fall of 2000 (collectively, "the Dead Stock").

28.   Most of the pieces of the Dead Stock were works which were salable at much higher prices in Europe than were offered to the Neuhoff Gallery due to, among other things, the decline in the value of the U.S. dollar in relation to the Euro and were works which various galleries in Europe had requested.  Rather than cast new editions of these pieces, LB Arts asked the Neuhoff Gallery to return the Dead Stock that it had purportedly not sold after holding for several years.

29.   Moreover, in its July 20, 2006 email, LB Arts stated unequivocally that its signature piece known as "terra cotta 39," a large seated figure with outstretched legs, was no longer for sale.  This was the original sculpture in terra cotta, as opposed to a copy cast from the original.  It was a signature piece that was important for major exhibitions of Ms. Beaumont's work.

30.    On July 20, 2006, by reply email to LB Arts from Ms. Neuhoff, the Neuhoff Gallery reported that three sales from the Dead Stock had been made and could be invoiced by LB Arts.

31.    In actuality, these three works had been sold in 2002 (some four years earlier), as indicated on the Neuhoff Gallery's invoices to its respective customers (copies of which have since been provided by the Neuhoff Gallery to LB Arts).

32.    On July 21, 2006, by separate email to LB Arts from the Neuhoff Gallery, an inventory was provided to LB Arts, wherein the terra cotta 39, in addition to the remaining Dead Stock, was represented to be part of the Neuhoff Gallery's existing inventory, as it had been on prior inventories.

33.    On or about September 7, 2006, during a telephone conversation, Ms. Neuhoff disclosed to Ms. Beaumont that the three most important pieces of the Dead Stock (other than the terra cotta 39) had been sold and could be invoiced.

34.    In actuality, the sale of these three pieces occurred in October 2002 (also some four years earlier), as indicated on the Neuhoff Gallery's invoices to its respective customers.

35.    During several telephone conversations and e-mails between Ms. Beaumont and Ms. Neuhoff in September and October 2006, Ms. Beaumont repeatedly and specifically requested from Ms. Neuhoff the return of the terra cotta 39, in particular because the piece was to be exhibited in Pietrasanta, Italy in February 2007.

36.    During these conversations, Ms. Neuhoff stated that the terra cotta 39 was being prepared for return to LB Arts by special shipment.

37.    In e-mails from Ms. Neuhoff of September 15, October 12, and October 26,

2006 to LB Arts, Ms. Neuhoff specifically stated that she was taking care of, "organizing" and "finalizing" the return shipment of the terra cotta 39 to LB Arts.

38.   In actuality, the terra cotta 39 had been part of a larger sale on December 17, 2003 (almost three years earlier), as indicated on the Neuhoff Gallery's invoice to its customer.

39.   On October 12, 2006, by email to LB Arts, the Neuhoff Gallery disclosed that two more pieces of the Dead Stock could be invoiced by LB Arts because they had been sold.

40.   In actuality, these two works had been sold in January and July 2004 (more than two years earlier), as indicated on the Neuhoff Gallery invoices to its customers.

41.   On December 20, 2006, by email to LB Arts, the Neuhoff Gallery disclosed without comment that six more pieces of the Dead Stock had been sold, including the terra cotta 39.

42.   On December 21, 2006, LB Arts advised the Neuhoff Gallery that the recent flurry of reported sales disclosed by the Neuhoff Gallery had made LB Arts aware that the Neuhoff Gallery had been under-reporting sales and providing false inventory reports and that in consequence LB Arts was withdrawing the Neuhoff Gallery's exclusivity for the U.S. and withdrawing its existing U.S. dollar price list for pieces still held on consignment.

43.   On January 5, 2007, LB Arts delivered a new price list in Euros, replacing the previous one, to apply between LB Arts and the Neuhoff Gallery on sales of LB Arts' artwork.

44.   The Neuhoff Gallery did not object to the new price list or react in any way to

this modification of LB Arts' offer to sell the pieces still held on consignment, and thereafter paid invoices rendered based upon it.

45.    On January 11, 2007, by email to LB Arts, the Neuhoff Gallery identified nine pieces of artwork and advised LB Arts that it was waiting for LB Arts to invoice the sales for such pieces and that such sales had previously been reported to LB Arts.

46.    In fact, only three of the nine artworks had previously been disclosed by the Neuhoff Gallery as having been sold (by the email sent by the Neuhoff Gallery on December 20, 2006), the remaining six sales had not at any previous time been reported as sold and they represented additional belatedly disclosed sales from the period 2004-2006.

47.    Immediately thereafter, because the Neuhoff Gallery had not been reporting sales of LB Arts' artwork and had been deliberately and repeatedly misrepresenting and actively concealing facts concerning such sales and its existing inventory, LB Arts demanded an accounting from the Neuhoff Gallery of all sales and all sums due and owing to LB Arts.

48.    LB Arts terminated the consignment relationship with the Neuhoff Gallery by an email sent on May 23, 2007.

49.    Thereafter, the Neuhoff Gallery and LB Arts entered into discussions, through counsel, to obtain the return of LB Arts' artwork still held by the Neuhoff Gallery and the payment of all monies owed to LB Arts.

50.    At that time, counsel for the Neuhoff Gallery disclosed the aforementioned copies of documents which purported to be all invoices from the Neuhoff Gallery to third party purchasers for the sales of all pieces of LB Arts' artwork.

51.    These purported invoices confirmed that the Neuhoff Gallery had been failing to report to LB Arts its sales of LB Arts' artwork to third party purchasers on a routine basis, had previously misrepresented the date that some such sales had occurred, and had not reported many sales made years earlier until pressured to do so by LB Arts' persistent demands for the return of certain long-held works from mid-2006 through the date of disclosure of the purported invoices.

52.    For the major part of the parties' relationship, namely from 2002-2007, unbeknownst to LB Arts, the Neuhoff Gallery had sold numerous pieces of LB Arts artwork but deliberately, routinely and systemically did not report such sales to LB Arts.

53.    For this same period, unbeknownst to LB Arts, the Neuhoff Gallery had deliberately, routinely and systemically prepared and submitted periodic false inventory reports to LB Arts which indicated that artwork remained in the Neuhoff Gallery's inventory despite the fact that numerous pieces of such artwork had already been sold by the Neuhoff Gallery and the proceeds of those sales had already received been by the Neuhoff Gallery.

54.    Over this same period, in response to periodic inquiries by LB Arts, unbeknownst to LB Arts, the Neuhoff Gallery at various times had falsely stated that artwork had not been sold and/or falsely reported the dates of sales of artwork to LB Arts.

55.    There remain four pieces of LB Arts' artwork in the Neuhoff Gallery's possession, custody or control which, despite due demand therefor, have not been returned, namely "nr 34 ed. 8/25", "nr 45 ed. EA3", "nr 70 ed. 1/25" and "terra cotta 38" but which appeared on inventories supplied by the Neuhoff Gallery to LB Arts.

56.    Annexed to this complaint and expressly incorporated herein as Exhibit 1 is a table based in large part upon the information provided to LB Arts by the Neuhoff Gallery summarizing, upon information and belief, each fraudulent (and thus contested) sale of LB Arts artwork held by the Neuhoff Gallery on consignment, including (among other things):

(a)   The actual date of the Neuhoff Gallery's sale (as disclosed by the Neuhoff Gallery invoices);

(b)   The date on which LB Arts was notified by the Neuhoff Gallery of the sale (as indicated by the date of LB Arts' invoice to the Neuhoff Gallery); and

(c)   The elapsed time from date of actual sale by the Neuhoff Gallery to the date that LB Arts received payment.

### FIRST CLAIM AGAINST
### THE NEUHOFF GALLERY
**(Fraud and Deceit)**

57.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 56 hereof as if fully set forth herein.

58.    The Neuhoff Gallery engaged in various fraudulent acts against LB Arts as part of a calculated scheme, the purpose and intention of which was to (a) affirmatively and deliberately conceal the sales of artwork and/or misrepresent the date of such sales in order to avoid and delay payments to LB Arts and (b) use and convert funds owed to LB Arts arising from the sale of pieces of artwork for the Neuhoff Gallery's own benefit.

59.    The Neuhoff Gallery intentionally, deliberately, routinely and systemically misrepresented or concealed material existing facts and engaged in other acts of affirmative concealment, including but not limited to, (a) refusing to report sales of

artwork to LB Arts when sales were made; (b) at various times, falsely reporting, orally and in writing, that various pieces of previously sold artwork had not been sold or the dates of sales of artwork to LB Arts; and (c) preparing and submitting periodic false inventory reports to LB Arts which indicated that artwork remained in the Neuhoff Gallery's inventory despite the fact that numerous pieces of such artwork had already been sold and the proceeds of those sales received by the Neuhoff Gallery.

60.    In addition, the Neuhoff Gallery repeatedly made various fraudulent misrepresentations, both orally and in writing, that the terra cotta 39 had not been sold and that the Neuhoff Gallery was returning the terra cotta 39 when, according to information later provided by the Neuhoff Gallery, the piece had long since been sold.

61.    LB Arts was ignorant of the falsity of the Neuhoff Gallery's intentional, deliberate, routine and systematic misrepresentations and concealment of material existing facts.

62.    LB Arts reasonably and justifiably relied to its detriment on the Neuhoff Gallery's intentional, deliberate, routine and systematic misrepresentations and active concealment of material existing facts, and such reliance was foreseeable.

63.    But for the Neuhoff Gallery's intentional, deliberate, routine and systematic misrepresentations and concealment of material existing facts, LB Arts would have produced and shipped pieces to the Neuhoff Gallery to replace those that were sold without its knowledge that would have been sold, resulting in damages in the form of lost sales and business opportunities.

64.    But for the Neuhoff Gallery's intentional, deliberate, routine and systematic misrepresentations and concealment of material existing facts, the Neuhoff Gallery

(having sold key pieces of artwork without reporting the sales to LB Arts) would have had replacement pieces for exhibitions to put on exhibitions and promote the artwork effectively, resulting in damages in the form of lost sales and business opportunities.

65.    But for the Neuhoff Gallery's intentional, deliberate, routine and systematic misrepresentations and concealment of material existing facts, Ms. Beaumont, through LB Arts, would not have decreased the amount of artwork that otherwise would have been produced and sold, resulting in damages in the form of lost sales and business opportunities.

66.    If LB Arts had known of the Neuhoff Gallery's fraud, that is, the concealment of sales and effective conversion of monies owed to LB Arts, then LB Arts would not have continued to do business with the Neuhoff Gallery at considerable monetary gain to the Neuhoff Gallery.

67.    By reason of the Neuhoff Gallery's fraud, LB Arts has been caused to suffer damages, including sums due by reason of unreported and/or belatedly reported sales of artwork and lost sales and business opportunities.

68.    By reason of the foregoing, LB Arts seeks judgment, in an amount to be determined at trial, for (a) the interest owed on sums belatedly paid by reason of unreported and/or belatedly reported sales of LB Arts artwork, and (b) LB Arts' lost sales and business opportunities, but which is not less than $500,000.

## SECOND CLAIM AGAINST
### THE NEUHOFF GALLERY
#### (Breach of Fiduciary Duty)

69.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 68 hereof as if fully set forth herein.

70.   The Neuhoff Gallery was selected by LB Arts to be its exclusive promotional and sales agent in the United States because of its alleged special skills, knowledge, experience, expertise and overall fitness for the purposes for which it was engaged.

71.   The parties had a confidential and fiduciary relationship by reason of the Neuhoff Gallery's role as promotional and sales agent and, among other things, LB Arts' reliance on the Neuhoff Gallery's overall integrity and fitness to be its agent, LB Arts' entrustment of many pieces of artwork to the Neuhoff Gallery for promotion and sale pursuant to their consignor-consignee relationship, an express agreement and/or implied duty to timely report sales to LB Arts, and the Neuhoff Gallery's duty to hold proceeds from such sales for the benefit of LB Arts.

72.   The Neuhoff Gallery owed LB Arts a fiduciary duty, including (a) an express agreement and/or implied duty to use its best efforts to promote and sell the art of LB Arts, (b) an implied duty of honesty, undivided loyalty and fair dealing with respect to the custody, care, promotion and sale of LB Arts' artwork, (c) an express agreement and/or implied duty to timely report sales to LB Arts, and (d) an implied duty to obey instructions with respect to matters entrusted to it.

73.   With respect to its role as agent of LB Arts, the Neuhoff Gallery is held to a standard of care commensurate with the special skill which is the norm for such kind of relationships in the art world.

74.   LB Arts was entitled to rely upon the Neuhoff Gallery's judgment and integrity with respect to the various matters for which it was engaged.

75.   The Neuhoff Gallery breached its fiduciary duty owed to LB Arts by reason of its intentional, deliberate, routine and systematic misrepresentation of material existing

facts and acts of affirmative concealment, including but not limited to, (a) refusing to report sales of artwork to LB Arts; (b) falsely reporting whether sales occurred and the dates of sales of artwork to LB Arts; and (c) preparing and submitting periodic false inventory reports to LB Arts which indicated that artwork remained in the Neuhoff Gallery's inventory despite the fact that numerous pieces of such artwork had already been sold and the proceeds of those sales received by the Neuhoff Gallery; and

76.    The Neuhoff Gallery breached its fiduciary duty owed to LB Arts by reason of its concealment of its prior sale of terra cotta 39 or, alternatively, by reason of its failure to obey LB Arts' instruction not to sell it.

77.    By reason of the Neuhoff Gallery's breach of its fiduciary duty, LB Arts was caused to suffer damages, including sums due by reason of unreported and/or belatedly reported sales of artwork, a sum equal to the price for which LB Arts could have sold the terra cotta 39 to a third party purchaser, and other lost sales and business opportunities.

78.    By reason of the foregoing, LB Arts seeks judgment, in an amount to be determined at trial, for (a) the interest owed on sums belatedly paid by reason of unreported and/or belatedly reported sales of LB Arts artwork, (b) the damages caused by the sale of the terra cotta 39, to wit, a sum equal to the price for which LB Arts could have sold the terra cotta 39 to a third party purchaser, and (c) LB Arts' other lost sales and business opportunities, but which is not less than $650,000.

**THIRD CLAIM AGAINST
THE NEUHOFF GALLERY**
**(Unjust Enrichment)**

79.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through78 hereof as if fully set forth herein.

80.    As alleged above, over the course of the parties' relationship, unbeknownst to LB Arts, the Neuhoff Gallery sold numerous pieces of LB Arts artwork but deliberately, routinely and systemically refused to report such sales or affirmatively misrepresented that no sales had occurred and/or misreported the date of such sales to LB Arts.

81.    Upon periodic inquiries by LB Arts, the Neuhoff Gallery deliberately, routinely and systemically prepared and submitted false inventory reports which indicated that LB Arts artwork remained in the Neuhoff Gallery's inventory despite the fact that numerous pieces of such artwork had already been sold and the proceeds of those sales received by the Neuhoff Gallery.

82.    Despite the allegedly poor sales of LB Arts artwork and because of  the Neuhoff Gallery's intentional, deliberate, routine and systematic concealment of its effective conversion of monies owed to LB Arts, LB Arts conferred and continued to confer various benefits upon the Neuhoff Gallery, including but not limited to continuing their confidential and fiduciary relationship, sending artwork to the Neuhoff Gallery, on consignment, and permitting its onward sale to bona fide, third party purchasers, permitting the Neuhoff Gallery to remain LB Arts' exclusive promotional and sales agent in the United States and otherwise doing business with the Neuhoff Gallery.

83.    If LB Arts had known of the Neuhoff Gallery's concealment of sales and effective conversion of monies owed to LB Arts, then LB Arts would not have continued to do business with the Neuhoff Gallery at considerable monetary gain to the Neuhoff Gallery.

84.    By reason of the foregoing, the Neuhoff Gallery has obtained and retained proceeds from the onward sale of LB Arts artwork to bona fide, third party purchasers

and, as such, had been unjustly enriched.

85.    By reason of the foregoing, the Neuhoff Gallery has been unjustly enriched at the expense of LB Arts.

86.    By reason of the foregoing, the Neuhoff Gallery has obtained and retained proceeds from the onward sale of LB Arts artwork to bona fide, third party purchasers under such circumstances that in equity and good conscience it should not retain.

87.    By reason of the foregoing, LB Arts is entitled to a judgment, in an amount to be determined at trial, for the amounts by which the Neuhoff Gallery has been unjustly enriched in the amount of the proceeds of its sales of LB Arts artworks less amounts it has already paid to LB Arts for any such piece, but which is not less than $1,000,000.

<div align="center">

**FOURTH CLAIM AGAINST**
**THE NEUHOFF GALLERY**
**(Restitution)**

</div>

88.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 87 hereof as if fully set forth herein.

89.    The equitable remedy of restitution provides for recovery against a party to prevent unjust enrichment and to disgorge proceeds wrongfully obtained by reason of fraud, the breach of a fiduciary duty, or other wrongful acts.

90.    By reason of the foregoing, LB Arts is entitled to the restitution of an amount to be determined at trial, for the amounts by which the Neuhoff Gallery has been unjustly enriched by reason of the benefits conferred by LB Arts upon the Neuhoff Gallery and as a result of the Neuhoff Gallery's intentional, wrongful and fraudulent conduct and breach of a fiduciary duty in the amount of the proceeds of its sales of LB Arts artwork less amounts it has already paid to LB Arts for any such piece, but which is not less

than $1,000,000.

## FIFTH CLAIM AGAINST
## THE NEUHOFF GALLERY
### (Constructive Trust)

91.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 90 hereof as if fully set forth herein.

92.    The parties had a confidential and fiduciary relationship by reason of, inter alia, the Neuhoff Gallery's role as exclusive promotional and sales agent of LB Arts in the United States.

93.    Pursuant to and in furtherance of such relationship, the Neuhoff Gallery impliedly promised to deal honestly with LB Arts with respect to the custody, care, promotion and sale of its artwork.

94.    In reliance on such promise and on the Neuhoff Gallery's presumed overall integrity and fitness as LB Arts' exclusive promotional and sales agent, LB Arts entrusted numerous pieces of artwork to the Neuhoff Gallery for promotion and sale.

95.    If LB Arts had known of the Neuhoff Gallery's concealment of sales and effective conversion of monies owed to LB Arts, then LB Arts would not have continued to do business with the Neuhoff Gallery at considerable monetary gain to the Neuhoff Gallery.

96.    The Neuhoff Gallery was unjustly enriched by its receipt of proceeds from onward sales of LB Arts artwork which in equity and good conscience it should not be permitted to retain.

97.    By reason of the foregoing, a constructive trust should be impressed upon all proceeds received by the Neuhoff Gallery from the onward sale of LB Arts artwork to

bona fide, third party purchasers after the date of its first act of fraud but no later than the date LB Arts received the first fraudulent inventory report from the Neuhoff Gallery.

98.    By reason of the foregoing, LB Arts is entitled to have the Neuhoff Gallery declared the constructive trustee of the amount by which the Neuhoff Gallery has been unjustly enriched, in the amount of the proceeds of its sales of LB Arts artwork less amounts it has already paid to LB Arts for any such piece, and to have the Neuhoff Gallery directed to pay to LB Arts such amount, which is not less than $1,000,000.

<div align="center">

**SIXTH CLAIM AGAINST**
**THE NEUHOFF GALLERY**
**(Statutory Trust)**

</div>

99.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 98 hereof as if fully set forth herein.

100.  The Neuhoff Gallery is an art merchant as defined by New York's Arts and Cultural Affairs Law § 11.01.

101.  LB Arts is the personal representative of Ms. Beaumont for purposes of the promotion and sale of her artwork and within the intendment of New York's Arts and Cultural Affairs Law § 12.01.

102.  In view of the foregoing, New York's Arts and Cultural Affairs Law § 12.01 is applicable to the relationship between the Neuhoff Gallery and LB Arts.

103.  Pursuant to New York's Arts and Cultural Affairs Law § 12.01(1)(a)(iv), the onward sale proceeds received by the Neuhoff Gallery, as an art merchant, from bona fide, third party purchasers of LB Arts artwork are trust funds in the hands of the Neuhoff Gallery for the benefit of LB Arts to the extent necessary to pay balances still due and owing.

104.  By reason of the foregoing, a statutory trust should be impressed upon all proceeds held by the Neuhoff Gallery from the onward sale of LB Arts artwork to third party purchasers, to the extent necessary to pay balances still due and owing to LB Arts, together with interest on such sums owed.

## SEVENTH CLAIM AGAINST
## THE NEUHOFF GALLERY
### (Conversion)

105.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 104 hereof as if fully set forth herein.

106.  In accordance with the parties' consignment relationship, LB Arts transferred four pieces of LB Arts' artwork to the Neuhoff Gallery, namely "nr 34 ed. 8/25", "nr 45 ed. EA3", "nr 70 ed. 1/25" and "terra cotta 38."

107.  LB Arts has made repeated demand for the return of these four pieces.

108.  Despite due demand therefor, the Neuhoff Gallery has, without authority, right or justification, refused to return such pieces to LB Arts and has otherwise interfered with LB Arts' right to such pieces and converted such pieces to its own use and benefit.

109.  By reason of the foregoing, LB Arts has been damaged.

110.  By reason of the foregoing, LB Arts is entitled to a judgment, in an amount to be determined at trial, for damages equaling the greater of any sums received by the Neuhoff Gallery for the sale of such pieces or the highest value of the pieces which can be reasonably determined, which is not less than $39,000.

**EIGHTH CLAIM AGAINST**
**THE NEUHOFF GALLERY**
**(Accounting)**

111.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 110 hereof as if fully set forth herein.

112.  The parties had a confidential and fiduciary relationship by reason of the various facts alleged above which imposed upon the Neuhoff Gallery an equitable obligation to provide LB Arts with a full, complete and proper accounting of the dates and proceeds of the Neuhoff Gallery's sales of all LB Arts artwork upon demand therefor.

113.  By reason of the Neuhoff Gallery's fraud, breach of fiduciary duty and other various wrongful acts, LB Arts has demanded and it is entitled to a full, complete and proper accounting of the dates and proceeds of the Neuhoff Gallery's sales of all LB Arts artwork.

114.  Despite due demand therefor, the Neuhoff Gallery has failed or refused to provide LB Arts with a full, complete and proper accounting of the dates and proceeds of the Neuhoff Gallery's sales of all LB Arts artwork.

115.  LB Arts has no adequate remedy at law.

**NINTH CLAIM AGAINST**
**THE NEUHOFF GALLERY**
**(Punitive Damages)**

116.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 115 hereof as if fully set forth herein.

117.  The Neuhoff Gallery's fraud, breach of fiduciary duty and other various wrongful acts were done deliberately and with knowledge of, conscious indifference to

and utter disregard for LB Arts' rights and the Neuhoff Gallery's obligations and for the improper purpose of defrauding LB Arts of the use of its money for the Neuhoff Gallery's own benefit and considerable direct monetary gain.

118.  The Neuhoff Gallery's fraud, breach of fiduciary duty and other various wrongful acts were wanton, willful and malicious.

119.  The Neuhoff Gallery's fraud, breach of fiduciary duty and other various wrongful acts exhibit a high degree of moral culpability and show such wanton dishonesty as to imply a criminal indifference to civil obligations.

120.  Upon information and belief, the Neuhoff Gallery, through the conduct of Ms. Neuhoff, has engaged in conduct aimed at the public generally, including similar acts with respect to other artists, including Mr. Fletcher Benton and Ms. Stacey Neff, which shows an utter disregard of its effect upon the rights of others.

121.  The Court may take judicial notice of the allegations contained in Mr. Benton's complaint, filed in the United States District Court for the Southern District of New York on October 18, 2006 (a copy of which is annexed to this complaint as Exhibit 2).

122.  As alleged by Mr. Benton, since 2003, he entrusted various works of art to the Neuhoff Gallery.

123.  As alleged by Mr. Benton, he had difficulty obtaining payment from the Neuhoff Gallery for works sold.

124.  As alleged by Mr. Benton, he has had difficulty obtaining information from the Neuhoff Gallery regarding its onward sale of his artwork to bona fide, third party purchasers.

125.  As alleged by Mr. Benton, since terminating his agency relationship with the

Neuhoff Gallery, Mr. Benton had difficulty obtaining the return of his artwork.

126.  The Court may take judicial notice of the allegations contained in Ms. Neff's

complaint, filed in the Supreme Court of State of New York, New York County, on

February 13, 2007 (a copy of which is annexed to this complaint as Exhibit 3).

127.  As alleged by Ms. Neff, since 1999, she entrusted various works of art to the

Neuhoff Gallery.

128.  As alleged by Ms. Neff, she has had difficulty obtaining payment from the

Neuhoff Gallery for works sold despite numerous demands.

129.  As alleged by Ms. Neff, she had difficulty obtaining information from the

Neuhoff Gallery regarding its onward sale of her artwork to bona fide, third party

purchasers.

130.  As alleged by Ms. Neff, she had difficulty obtaining the return of her artwork

from the Neuhoff Gallery.

131.  Upon information and belief, the Neuhoff Gallery's acts were undertaken with

respect to the aforementioned artists for the related purposes of defrauding such artists

and obtaining the improper and unauthorized use of their money.

132.  In view of (a) the improper purpose for which the Neuhoff Gallery's acts were

conducted, (b) the repeated and orchestrated nature of such acts occurring over several

years, (c) the Neuhoff Gallery's active and affirmative concealment of its wrongdoing,

and (d) the Neuhoff Gallery's repeated commission of similar acts with respect to other

artists, LB Arts is entitled to an award for punitive damages in an amount to be

determined at trial.

**TENTH CLAIM AGAINST**
**<u>NEUHOFF INDIVIDUALLY</u>**
**(RICO - Treble Damages – Attorneys' Fees)**

133.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 132 hereof as if fully set forth herein.

134.  Ms. Neuhoff is a "person" as that term is defined by 18 U.S.C. § 1961(3).

135.  Ms. Neuhoff formed a scheme or artifice to defraud various artists and to obtain the use of their money by means of fraudulent representations, <u>to</u> <u>wit</u>, (a) by entering into arrangements or relationships with artists to hold artworks on consignment for promotion and sale by the Neuhoff Gallery, (b) upon the sale of artwork held on consignment, to convert funds owed to artists for the Neuhoff Gallery's own use, and (c) to actively and affirmatively conceal the existence and date of sales of artwork and the Neuhoff Gallery's conversion and use of such funds in order to induce such artists to continue to do business with the Neuhoff Gallery.

136.  In furtherance of Ms. Neuhoff's scheme or artifice to defraud various artists and to obtain the use of their money by means of fraudulent representations, Ms. Neuhoff intentionally, deliberately, routinely and systemically misrepresented and concealed material existing facts, including but not limited to, refusing to report or belatedly reporting sales of artwork to artists, refusing to timely or fully pay artists for artwork sold or to return unsold artwork, and preparing and submitting false inventory reports to artists which indicated that artwork remained in the Neuhoff Gallery's inventory despite the fact that numerous pieces of such artwork had already been sold by the Neuhoff Gallery.

137.  Ms. Neuhoff, in furtherance of her scheme or artifice to defraud various artists

and to obtain the use of their money by means of fraudulent representations, at various times (a) used and/or caused the use of the United States mails and/or private or commercial interstate carriers by mailing payments and other documents to artists, and (b) transmitted or caused to be transmitted various writings by means of wire communications in interstate or foreign commerce, in the forms of faxes and emails pertaining to, inter alia, whether sales of artwork had occurred, the purported dates of sales of artwork, and the Neuhoff Gallery's purported inventory of artwork at various times.

138.  Ms. Neuhoff used or caused the use of the United States mails and/or private or commercial interstate carriers and transmitted or caused the transmission by means of wire communications with the specific intent to deceive or defraud various artists and to obtain the use of their money by means of fraudulent representations.

139.  The foregoing acts by Ms. Neuhoff were committed willfully.

140.  The foregoing acts by Ms. Neuhoff constitute violations of 18 U.S.C. § 1341.

141.  The foregoing acts by Ms. Neuhoff constitute violations of 18 U.S.C. § 1343.

142.  Ms. Neuhoff's use of the United States mails and/or private or commercial interstate carriers and transmittals by means of wire communications was a natural and probable consequence of her scheme or artifice to deceive or defraud various artists and to obtain the use of their money by means of fraudulent representations.

143.  LB Arts detrimentally relied on the fraudulent misrepresentations of Ms. Neuhoff by, inter alia, refraining from demanding an accounting of the status of the artwork held on consignment, continuing to maintain a significant inventory on consignment with the Neuhoff Gallery, refraining from demanding the return of the Dead

Stock and other pieces of artwork until July 2006, continuing to do business with the

Neuhoff Gallery, and refraining from pursuing LB Arts' legal rights against the Neuhoff

Gallery until now.

144.  The foregoing predicate acts by Ms. Neuhoff constitute racketeering activity as

defined by 18 U.S.C. § 1961(1).

145.  In addition to the various predicate acts undertaken against LB Arts, upon

information and belief, Ms. Neuhoff has engaged in similar predicate acts with respect

to Mr. Fletcher Benton and Ms. Stacey Neff.

146.  Upon information and belief, Ms. Neuhoff has undertaken predicate acts with

respect to Mr. Benton and Ms. Neff, and in the same manner and using the same

means with respect to LB Arts.

147.  Upon information and belief, Ms. Neuhoff's predicate acts were related and

undertaken repeatedly and continuously over the course of several years.

148.  Upon information and belief, Ms. Neuhoff's predicate acts were undertaken

with respect to the aforementioned artists for the related purposes of defrauding such

artists and obtaining the improper and unauthorized use of their money.

149.  In view of the foregoing, upon information and belief, Ms. Neuhoff has engaged

in a pattern of racketeering activity.

150.  At all relevant times, Ms. Neuhoff has controlled, directed, managed and

conducted the affairs of the Neuhoff Gallery.

151.  The Neuhoff Gallery is engaged in the promotion, sale and distribution of

artwork involving interstate and foreign commerce.

152.  Ms. Neuhoff has conducted the affairs of the Neuhoff Gallery through the

above-described pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

153.  LB Arts exercised reasonable diligence in discovering Ms. Neuhoff's violation of 18 U.S.C. § 1962(c).

154.  But for Ms. Neuhoff's violation of 18 U.S.C. § 1962(c), LB Arts would not have suffered damages.

155.  Ms. Neuhoff's violation of 18 U.S.C. § 1962(c) proximately caused LB Arts' damages.

156.  LB Arts has been damaged by its loss of use of (a) monies due and owing to LB Arts from the date of sale of its artwork but improperly retained by the Neuhoff Gallery and (b) certain pieces of its artworks which have not been returned despite due demand therefor.

157.  Pursuant to 18 U.S.C. § 1964(c), LB Arts is entitled to an award of (a) treble damages with respect to the injury to its business and property, and (b) reasonable attorney's fees.

WHEREFORE Plaintiff LB Arts Sprl demands (i) a money judgment against the Neuhoff Gallery for the amounts described herein and an award of punitive damages, (ii) that a trust be impressed on the funds described herein and received by the Neuhoff Gallery to be held for the benefits of Plaintiff LB Arts Sprl, and (iii) judgment against Defendant Heidi Neuhoff under 18 U.S.C. § 1964(c), together with costs and expenses,

including attorneys' fees, of this action, and such other and further relief as the Court

deems just and proper.

Jury Demand: Trial by jury is hereby demanded.

Dated:  New York, New York
        April 18, 2008

                            EATON & VAN WINKLE LLP


                            By: _____/s/_____
                                  Ted G. Semaya
                                  Joseph T. Johnson

                            3 Park Avenue
                            New York, New York 10016
                            (212) 779-9910

                            Counsel for Plaintiff LB Arts Sprl

# Case No.

# 08 Civ. 3726

# Exhibits

# *Exhibit 1*

**Exhibit 1 to Complaint**

**Summary of the Disposition of Each Fraudulent (and thus contested) Sale**

| Sculpture No. | Edition | LB Art's Sale Price / Invoiced | Date of Sale as Disclosed by the Neuhoff Gallery to the Neuhoff Gallery | Date of Receipt of Payment from the Neuhoff Gallery / received by the Neuhoff Gallery | Receipt of Proceeds | Elapsed Time from Neuhoff Gallery's Sale Date to LB Art's Receipt of Payment |
|---|---|---|---|---|---|---|
| **2005** | | | | | | |
| 1 | bronze 52 | 7/8 | $ 13,200.00 | 23 Aug. 2003 | 29 Apr. 2005 | $35,000 | 2 years |
| 2 | bronze 64 | 2/8 | 14,000.00 | 20 July 2004 | 26 May 2006 | $22,000 | 2 years |
| 3 | bronze 58 | 2/25 | 7,500.00 | 3 Dec. 2004 | 15 Jul. 2005 | $15,000 | 6 months |
| | Total: | | $ 34,700.00 | | | $ 72,000.00 | |
| **2006** | | | | | | |
| 4 | cast iron 43 | 7/8 | $ 7,500.00 | 16 Apr. 2005 | 17 March 2006 | $10,500 | 1 year |
| 5 | bronze 32 | 4/8 | 24,000.00 | 28 June 2006 | 2 Nov. 2006 | $45,000 | 4 years |
| 6 | bronze 32 | 6/8 | 24,000.00 | 18 May 2002 | 2 Nov. 2006 | $48,000 | 4 years |
| 7 | 2 bases | | 1,800.00 | 20 March 2006 | 2 Nov. 2006 | $1,800 | 4 years |
| 8 | bronze 18 | 4/7 | 25,000.00 | 22 Oct. 2002 | 7 Sept. 2006 | $47,000 | 4 years |
| 9 | bronze 19 | 3/7 | 25,000.00 | 22 Oct. 2002 | 7 Sept. 2006 | $47,000 | 4 years |
| 10 | bronze 20 | 3/7 | 25,000.00 | 22 Oct. 2002 | 7 Nov. 2006 | $46,000 | 4 years |
| 11 | bronze 60 | 5/8 | 12,000.00 | 13 Feb. 2006 | 7 Nov. 2006 | $20,100 | 4 years |
| 12 | bronze 25 | 1/7 | 24,000.00 | 28 Jan. 2004 | 21 Dec. 2006 | $48,000 | 3 years |
| 13 | bronze 36 | 1/8 | 10,800.00 | 13 July 2004 | 21 Dec. 2006 | $15,000 | 2.5 years |
| | Total: | | $ 179,100.00 | | | $ 328,400.00 | |
| **2007** | | | | | | |
| 14 | drawing 67 | 1/1 | € 4,200.00 | 4 Jan. 2006 | 11 June 2007 | $7,125.00 | 18 months |
| 15 | deposit 2 br. 3: | EA3 | 5,000.00 | NA | 15 Jan. 2007 | $5,000.00 | |
| 16 | bronze 37 | EA3 | 12,000.00 | 2 Apr. 2004 | 15 Jan. 2007 | $16,800.00 | 3 years |
| 17 | terracotta 37 | EA3 | 8,000.00 | 2 Feb. 2005 | 19 March 2007 | $14,000.00 | 2 years |
| 18 | bronze 49 | 7/8 | € 16,000.00 | 19 May 2005 | 11 April 2007 | $45,000.00 | 2 years |
| 19 | bronze 52 | 7?? | € 14,000.00 | 22 Apr. 2006 | 11 April 2007 | $26,000.00 | 1 year |
| 20 | bronze 64 | 4/8 | € 13,000.00 | 6 May 2005 | 11 April 2007 | $32,000.00 | 2 years |
| 21 | bronze 62 | 8A2 | € 18,000.00 | 21 July 2006 | 11 April 2007 | $39,000.00 | 9 months |
| 22 | cast iron 62 | 2/8 | € 7,000.00 | 22 Apr. 2006 | 11 Jan. 2007 | $39,000.00 | 1 year |
| 23 | bronze 25 | 2/7 | € 25,000.00 | 22 Apr. 2004 | 18 July 2007 | $10,500.00 | 3 years |
| 24 | bronze 24 | 2/8 | € 25,000.00 | 13 July 2004 | 18 July 2007 | $33,000.00 | 2.5+ years |
| 25 | bronze 58 | 10/25 | € 10,000.00 | 13 Nov. 2004 | 18 July 2007 | $10,800.00 | 1 year |
| 26 | base | | € 7,000.00 | 26 June 2006 | 18 July 2007 | $11,100.00 | 1 year |
| | | | € 670.00 | 29 June 2006 | 18 July 2007 | 670.00 | |
| | Total €: | | € 116,870.00 | | | € 670.00 | |
| | Total $: | | $ 25,000.00 | | | $ 250,325.00 | |
| **2008** | | | | | | |
| 27 | bronze 34 | 8/25 | 7,000.00 | not returned | 8 Jan. 2008 | not paid | |
| 28 | bronze 45 | EA3 | 15,000.00 | not returned | 8 Jan. 2008 | not paid | |
| 29 | bronze 70 | 1/25 | 2,000.00 | not returned | 8 Jan. 2008 | not paid | |
| 30 | terracotta 38 | 1/1 | 15,000.00 | not returned | 8 Jan. 2008 | not paid | |
| 31 | terracotta 39 | 39 | € 105,000.00 | 17-Dec-03 | 8 Jan. 2008 | not paid | 3.5 years |
| | Total: | | € 105,000.00 | | | € 105,000.00 | |
| | | | $ 39,000.00 | | | $ 39,000.00 | |

# *Exhibit 2*

John B. Koegel (JK-4762)
The Koegel Group LLP
161 Avenue of the Americas
New York, New York 10013
(212) 255-7744

Attorneys for Plaintiff
Fletcher Benton

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FLETCHER BENTON,

<div style="margin-left: 2em;">Plaintiff,</div>

- against -

NEUHOFF GALLERY, INC.

<div style="margin-left: 2em;">Defendant.</div>

06 Civ 9925 (KMK)

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff, FLETCHER BENTON, by his attorneys, The Koegel Group LLP, as and for his complaint states as follows:

<u>NATURE OF THE ACTION</u>

1.      Beginning in or about August 2003, Plaintiff agreed to consign works of art created and owned by him to the Defendant and to engage the Defendant as a primary representative for his work. Pursuant to that Agreement, Plaintiff did entrust many works of art to the Defendant. In August 2005, due in part to a difficulty receiving payments from the Defendant for works sold (from sales proceeds paid to the Defendant) and in part to a difficulty in receiving information from the Defendant regarding sales, Plaintiff terminated the agency relationship. Defendant promised to return all consigned works by September 2005. Since then Plaintiff has been steadfastly pursuing the return of all works and seeking payment from sales.

<div style="text-align: center;">1</div>

Defendant's continued failure to return all works and to make a full payment for sales and to compensate Plaintiff for works that were damaged while in Defendant's custody necessitates this proceeding.

### JURISDICTION AND VENUE

1.    This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, exclusive of costs and interest, and this action is between citizens of different states.

2.    Venue is proper in this district under 28 U.S.C. § 1391 (a) and 1391(c) in that a substantial part of the events giving rise to the claims occurred in this judicial district, Defendant may be found in this district and Defendant is subject to personal jurisdiction in this district.

### PARTIES

1.    Plaintiff, Fletcher Benton, (hereinafter "Benton"), is an accomplished and respected visual artist solely engaged in the creation of works of art.

2.    Benton maintains a studio and principal place of business at 250 Dore Street, San Francisco, California. He is a citizen of the State of California.

3.    Upon information and belief, Defendant Neuhoff Gallery, Inc. (hereinafter "Neuhoff") is engaged in the business of exhibiting and selling works of art and currently there is a gallery premises entitled Neuhoff Gallery at 41 East 57th Street, 4th Floor, New York, New York. Neuhoff is believed to be a citizen of the State of New York.

4.    Neuhoff is an "art merchant" within the meaning of New York Arts and Cultural Affairs Law § 11.01 and § 12.01.

5.    Beginning in 2003 and from time to time, Benton entrusted artworks created and owned by him to Neuhoff. Although no formal, written agreement of any kind was ever entered

2

into, Neuhoff was authorized by Benton to exhibit and to seek sales of these artworks and was entitled to receive a commission on any sale generated at the gallery or on any sale of a work consigned to Neuhoff made by other galleries to which such entrusted artworks may have been reconsigned.

6. Since Benton is an artist and Neuhoff is an art merchant, and since the artworks were entrusted by Benton to Neuhoff which is located within New York State, the status of the entrusted works, the proceeds of any sale of the entrusted works, as well as the relationship between Benton and Neuhoff are all governed by and determined under the New York Arts and Cultural Affairs Law (hereinafter "NYACAL").

<div align="center">

AS AND FOR A FIRST CLAIM
(Conversion)

</div>

7. Pursuant to NYACAL § 12.01(1)(a)(ii), all of the artworks entrusted by Benton to Neuhoff are trust property in the hands of Neuhoff for the benefit of Benton.

8. Pursuant to NYACAL § 12.01(1)(a)(iii), all proceeds of the sales of artworks entrusted by Benton to Neuhoff are trust funds in the hands of Neuhoff for the benefit of Benton.

9. As trust property and trust funds in the hands of Neuhoff, Benton has an absolute ownership right to the artworks entrusted to Neuhoff (up to and until any authorized sale) and in the event of any authorized sale an absolute ownership right to the proceeds of any such sale.

10. Neuhoff has repeatedly exercised unauthorized dominion and control over such trust property and trust funds to the exclusion of Benton's rights therein.

11. Neuhoff has admitted in writing that it has long been in possession of at least $2,850 in trust funds from sales of Benton artworks which have not been remitted to Benton.

<div align="center">

3

</div>

12. Upon information and belief, Neuhoff is in possession of eleven works of art belonging to Benton. The total value of all of these eleven works is $229,500.

13. Neuhoff 's refusal to remit trust funds and to return property to Benton despite repeated demands therefore has been willful, flagrant and with a high degree of moral culpability.

14. Benton has been damaged by Neuhoff 's conversion of his trust property valued at $229,500 and trust funds in a known, admitted amount of $2,850 and may have been damaged additionally by an amount to be determined upon a trial of this action.

15. In light of Neuhoff 's willfulness, flagrancy and the high degree of moral culpability in connection with Neuhoff 's conversion of Benton's trust property and trust funds, Benton demands an additional award of punitive damages in an amount to be determined by the Court but in no event less than $100,000.

## AS AND FOR A SECOND CLAIM
### (Breach of Consignment Agreement)

16. Beginning in or about 2003, Benton from time to time consigned works of art created and owned by him to Neuhoff .

17. Each and every such consignment was made pursuant to the understanding and agreement that Neuhoff would remit to Benton a percentage of sales proceeds that would constitute Benton's share of any sale. Neuhoff in turn was authorized to engage in the sale of consigned works either directly or through others and was entitled to a sales commission in the event that a sale of a consigned work was effected through the efforts of Neuhoff or through the efforts of a gallery to which a consigned artwork may have been reconsigned by Neuhoff . Neuhoff has acknowledged and admitted that sales proceeds in the amount of $2,850 are due and

4

payable to Benton. These sales proceeds have not been paid to Benton notwithstanding numerous demands.

18. Neuhoff has failed to return or properly account for eleven works of art having a total current value of $229,500.

19. Neuhoff has breached its consignment agreement obligations by failing to promptly and fully remit certain sales proceeds and by failing to return eleven works of art.

20. Neuhoff's refusal to return works has prevented Benton from exhibiting and selling those works and as such has damaged Benton in an amount to be determined at trial based on the period of time that Benton has been prevented from marketing these works.

21. Benton has been damaged by such breaches by Neuhoff for at least the admitted amount of $2,850 (plus interest from the date that trust funds belonging to Benton were received by Neuhoff), for an unknown additional amount to be determined at trial, and for the value of the eleven unreturned works.

22. Implicit in the agreement between the parties and as an obligation imposed upon a bailee as matter of law, Neuhoff was responsible for the care and conservation of consigned works while in its custody or control. Since Neuhoff was obligated to return any works which were not sold upon demand, this obligation existed up to and until the works were delivered back into the possession of Benton.

23. Beginning in August 2005, Benton has been demanding the return of all unsold works. This demand was partially satisfied by a return of works that were received by Benton on August 15, 2006. Three (3) of the works returned on that day were damaged and Neuhoff was immediately notified. Additional works were returned to Benton on September 13, 2006 and eight (8) of the works returned on that day were damaged and Neuhoff was immediately notified.

5

24. Benton has demanded compensation for this damage and an offer has been made to accept $4,800 as a minimum amount that would be satisfactory. Accordingly Benton has been damaged in the minimum amount of $4,800 or more depending upon the cost of a qualified professional conservator to independently make the necessary repairs.

### AS AND FOR A THIRD CLAIM
(Accounting)

25. Pursuant to NYACAL §§ 12.0(1)(a)(i), (ii) and (iii), with respect to every artwork consigned to Neuhoff by Benton, Neuhoff was Benton's agent, with responsibility for the conservation and sale of such trust property and the remittance of any trust funds from any and every sale of an artwork consigned to it by Benton.

26. As Benton's agent for the conservation and sale of such artwork, and for the remittance of any trust funds from any sale of an artwork consigned to it by Benton, Neuhoff was a fiduciary on behalf of Benton, and subject to all requirements such a relationship entails, including, but not limited to, an obligation to accurately account for and promptly remit any trust funds due Benton.

27. Neuhoff has breached this fiduciary duty by failing to accurately account for and by failing to promptly and fully remit trust funds due Benton from sales of artworks consigned to it.

28. An accounting is necessary to ascertain the full extent of Neuhoff 's breach of fiduciary duty by failing to account for and failing to timely and fully remit trust funds due Benton.

29. Neuhoff has refused all requests to accurately account for and remit all trust funds due Benton.

30. Accordingly, Benton demands an order directing Neuhoff to accurately account for and provide Benton all information relating to all consignments, sales and proceeds of sales from such consignments, and to remit to Benton any trust funds and/or trust property revealed to be owed to Benton by such accounting.

<div align="center">

AS AND FOR A FOURTH CLAIM
(Breach of Fiduciary Duty)

</div>

31. Pursuant to NYACAL § 12.01(1)(a)(v) and common law, Neuhoff, as a fiduciary, may not commingle trust funds and trust property held for Benton's benefit with other funds and property.

32. Neuhoff has breached and continues to breach its clear fiduciary and statutory duties to Benton by holding Benton's trust funds and refusing to pay over such funds to Benton, as required.

33. Upon information and belief, Neuhoff also has improperly appropriated artworks belonging to Benton without the consent of Benton.

34. Benton has been damaged by such breaches of fiduciary and statutory duty in a known amount of at least $232,350 and in an unknown amount to be determined at trial.

35. In light of Neuhoff's intentional and deliberate breaches of his fiduciary and statutory obligations and its conscious and wanton disregard of Benton's rights, Defendant demands an additional award of punitive damages in an amount to be determined by the Court but in no event less than $100,000.

WHEREFORE, Plaintiff, Fletcher Benton, demands judgment against the Defendant, Neuhoff Gallery, Inc., as follows: i) an award of damages in the amount of $2,850 plus interest from the date that purchase price proceeds were received by Defendant; ii) an award of damages in the amount of $229,500 for the conversion of eleven works of art belonging to Plaintiff which have been converted by Defendant; iii) an award of damages in an amount to be determined at trial but no less than $4,800 for damages inflicted on eleven works of art while in the custody of the Defendant; iv) an order directing Defendant to deliver any and all works of art in its possession, custody, or control in the same condition in which the works existed when consigned; v) an award of consequential damages in an amount to be determined at trial due to Plaintiff's inability to exhibit and sell the works which have not been returned; vi) an accounting for any additional monies owed to Plaintiff as a result of any acts by Defendant which would entitle Plaintiff to additional funds; vii) an award of punitive damages in the amount determined by the Court but in no event less than $100,000; and viii) any further relief that this Court may find just and proper, together with the costs and disbursements of this Action.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: New York, New York

October 18, 2006

8

By:     _____
         John B. Koegel (JK 4762)

THE KOEGEL GROUP LLP
Attorneys for Plaintiff
161 Avenue of the Americas
New York, New York 10013
Tel: (212) 255-7744
Fax: (212) 337-1103

*Exhibit 3*

104 —Summons without Notice, Blank Court
Personal or Substituted Service  12 pt type.  4-94

Blumberg Excelsior, Publisher, NYC 10013

Supreme COURT of the State of New York
COUNTY OF New York

Index No.
Date purchased 2/12/07

Stacey Neff

Plaintiff(s) designate(s)
New York
County as the place of trial.

*Plaintiff(s)*

*against*

Neuhoff Gallery, Inc. and Heidi Neuhoff
International Fine Art, Inc.

**Summons** 76005 4 4

The basis of the venue is
location of Defendants

*Defendant(s)*

Plaintiff(s) reside(s) at 1226 B Cerro Gordo, Santa Fe, New Mexico 87501
County of Santa Fe

To the above named Defendant(s)

**You are hereby summoned**    to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20     days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in this complaint.

Dated, February 12, 2007

FILED
NEW YORK COUNTY CLERK'S
FEB 13 2007

Defendant's address:
41 East 57th Street
New York, New York 10022

Attorney(s) for Plaintiff
The Koegel Group LLP
Office and Post Office Address
161 Avenue of the Americas
New York, New York 10013
(212) 255-7744



104 —Summons without Notice, Blank Court
Personal or Substituted Service  12 pt. type.  4-94

Blumberg Excelsior, Publisher, NYC 10013

Supreme COURT of the State of New York
COUNTY OF New York

Index No.

Date purchased 2/_12_/07

Stacey Neff

Plaintiff(s) designate(s)
New York
County as the place of trial.

*against*                **Plaintiff(s)**

# Summons

Neuhoff Gallery, Inc. and Heidi Neuhoff
International Fine Art, Inc.

The basis of the venue is
location of Defendants

**Defendant(s)**

Plaintiff(s) reside(s) at 1226 B Cerro Gordo, Santa Fe, New Mexico 87501
County of Santa Fe

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in this complaint.

Dated, February _12_ 2007

Defendant's address:
41 East 57th Street
New York, New York 10022

Attorney(s) for Plaintiff
The Koegel Group LLP
Office and Post Office Address

161 Avenue of the Americas
New York, New York 10013
(212) 255-7744

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - -

STACEY NEFF

                    Plaintiff,

          - against -

NEUHOFF GALLERY, INC. AND HEIDI
NEUHOFF INTERNATIONAL FINE ART, INC.

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -

Index No.

07600344

COMPLAINT

Plaintiff, Stacey Neff, by her attorneys The Koegel Group LLP, for her complaint against the Defendants hereby alleges as follows:

      1.      Plaintiff, Stacey Neff (hereinafter "Neff"), is an accomplished and respected visual artist solely engaged in the creation of works of art. Neff maintains a studio and principal place of business at 1226 B Cerro Gordo, Santa Fe, New Mexico.

      2.      Upon information and belief, Defendants Neuhoff Gallery, Inc. and Heidi Neuhoff International Fine Art, Inc. (hereinafter collectively referred to as "Neuhoff") are engaged in the business of exhibiting and selling works of art and currently there is a gallery premises entitled Neuhoff Gallery at 41 East 57th Street, 4th Floor, New York, New York. The corporate structure and interrelationship between these entities is unknown at this time but they present themselves to the public and they presented themselves to the Plaintiff as a single business owned and operated by Heidi Neuhoff.

      3.      Neuhoff is an "art merchant" within the meaning of New York Arts and Cultural Affairs Law § 11.01 and § 12.01.

      4.      Beginning in or about 1999 and from time to time, Neff entrusted artworks created and owned by her to Neuhoff. Although no formal, written agreement of any kind

- 1 -

was ever entered into, Neuhoff was authorized by Neff to exhibit and to seek sales of these artworks and was entitled to receive a commission on any sale generated at the gallery or on any sale of a work consigned to Neuhoff made by other galleries to which such entrusted artworks may have been reconsigned.

5.      Since Neff is an artist and Neuhoff is an art merchant, and since the artworks were entrusted by Neff to Neuhoff which is located within New York State, the status of the entrusted works, the proceeds of any sale of the entrusted works, as well as the relationship between Neff and Neuhoff are all governed by and determined under the New York Arts and Cultural Affairs Law (hereinafter "NYACAL").

6.      Pursuant to NYACAL § 12.01(1)(a)(ii), all of the artworks entrusted by Neff to Neuhoff were and are trust property in the hands of Neuhoff for the benefit of Neff.

7.      Pursuant to NYACAL § 12.01(1)(a)(iii), all proceeds of the sales of artworks entrusted by Neff to Neuhoff were and are trust funds in the hands of Neuhoff for the benefit of Neff.

8.      As trust property and trust funds in the hands of Neuhoff, Neff has an absolute ownership right to the artworks entrusted to Neuhoff (up to and until any authorized sale) and in the event of any authorized sale an absolute ownership right to the proceeds of any such sale. Any purported sale after termination of authority and/or after any demand for a return of any work(s) would be unauthorized and would constitute an unlawful, improper exercise of dominion and control and a breach of fiduciary duty.

9.      Pursuant to NYACAL §§ 12.0(1)(a)(i), (ii) and (iii), with respect to every artwork consigned to Neuhoff by Neff, Neuhoff was Neff's agent, with responsibility for

the conservation and sale of such trust property and the remittance of any trust funds from any and every sale of an artwork consigned to it by Neff.

10.    As Neff's agent for the conservation and sale of such artwork, and for the remittance of any trust funds from any sale of an artwork consigned to it by Neff, Neuhoff was a fiduciary on behalf of Neff, and subject to all requirements such a relationship entails, including, but not limited to, an obligation to accurately account for and promptly remit any trust funds due Neff.

11.    Each and every such consignment was made pursuant to the understanding and agreement that Neuhoff would remit to Neff a percentage of sales proceeds that would constitute Neff's share of any sale. Neuhoff in turn was authorized to engage in the sale of consigned works either directly or through others and was entitled to a sales commission in the event that a sale of a consigned work was effected through the efforts of Neuhoff or through the efforts of a gallery to which a consigned artwork may have been reconsigned by Neuhoff.

12.    Upon information and belief, sales proceeds in the amount of $2,478 are due and payable to Neff. These sales proceeds have not been paid to Neff notwithstanding numerous demands.

13.    Neuhoff has failed to return or properly account for seven works of art having a total current value of $19,000.

14.    Implicit in the agreement between the parties and as an obligation imposed upon a bailee as matter of law, Neuhoff was responsible for the care and conservation of consigned works while in its custody or control. Since Neuhoff was obligated to return any works which were not sold upon demand, this obligation existed up to and until the works were delivered back into the possession of Neff.

15.    Neff's demand for a return of all unsold works partially satisfied by a return of some works. However, four (4) of the works returned were returned severely damaged to the extent that the damage is irreparable. Accordingly, Neuhoff is liable for the destruction of four works of art entrusted to Neuhoff. The total retail value of the four destroyed works is $37,204.

16.    Neuhoff's authority to sell works consigned by Neff was strictly conditioned upon selling works for not less than the retail price consented to by Neff. Upon information and belief, Neuhoff breached this condition and this obligation and this authority by selling works for less than the authorized amount. Neff is aware of one work in particular which Neff specifically stated could not be sold for less than $60,000. Neuhoff knowingly and willfully disregarded this condition and sold the work for less than the permitted amount. Neff is at least entitled to the full amount that would have been due to her for an authorized sale which in this particular instance would be $15,000. An accounting of all sales may indicate that further monies are due for additional breaches of this condition/authorization.

## AS AND FOR A FIRST CAUSE OF ACTION
(Accounting)

17.    Neuhoff has breached its fiduciary duty to accurately account for and to promptly and fully remit trust funds due Neff from sales of artworks consigned.

18.    Neuhoff has refused all requests to accurately account for and remit all trust funds due Neff.

19.    Accordingly, Neff demands an order directing Neuhoff to accurately account for and provide Neff all information relating to all consignments, sales and

proceeds of sales from such consignments, and to remit to Neff any trust funds and/or trust property revealed to be owed to Neff by such accounting.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Conversion)

20.    Upon information and belief, Neuhoff is in possession of seven works of art belonging to Neff. The total value of all of these seven works is $19,000.

21.    Neuhoff's refusal to return property to Neff despite repeated demands therefore has been willful, flagrant and with a high degree of moral culpability.

22.    Neff has been damaged by Neuhoff's conversion of her trust property valued at $19,000 and may have been damaged additionally by an amount to be determined upon a trial of this action.

23.    In light of Neuhoff's willfulness, flagrancy and the high degree of moral culpability in connection with Neuhoff's conversion of Neff's trust property, Neff demands an additional award of punitive damages in an amount to be determined by the Court but in no event less than $50,000.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Consignment Agreement)

24.    Neuhoff has breached the consignment agreement by failing to return or properly account for seven works of art having a total current value of $19,000.

25.    Neuhoff's refusal to return works has prevented Neff from exhibiting and selling those works and as such has damaged Neff in an amount to be determined at trial based on the period of time that Neff has been prevented from marketing those works.

26.     Neuhoff has breached the consignment agreement by failing to promptly and fully remit sales proceeds that belong to Neff for at least the amount of $2,478 (plus interest from the date that trust funds belonging to Neff were received by Neuhoff), for an unknown additional amount to be determined at trial.

27.     Neuhoff has breached the consignment agreement by selling works for less than the authorized amount and Neff has been damaged for an unknown additional amount to be determined at trial for no less than $15,000 for these unauthorized sales.

28.     Neuhoff has breached the consignment agreement by irreparably damaging or failing to accept responsibility for the irreparable damage to four works of art and Neff has been damaged in the amount of $37,204 for the destruction of four works of art.


### AS AND FOR A FOURTH CAUSE OF ACTION
(Breach of Fiduciary Duty)

29.     Neuhoff has breached and continues to breach its clear fiduciary and statutory duties to Neff by holding Neff's trust funds and refusing to pay over such funds to Neff, as required.

30.     Upon information and belief, Neuhoff also has improperly appropriated artworks belonging to Neff without the consent of Neff.

31.     Neff has been damaged by such breaches of fiduciary and statutory duty in a known amount of at least $36,478 and in an unknown amount to be determined at trial.

32.     In light of Neuhoff's intentional and deliberate breaches of his fiduciary and statutory obligations and its conscious and wanton disregard of Neff's rights,

- 6 -

Defendant demands an additional award of punitive damages in an amount to be determined by the Court but in no event less than $50,000.

WHEREFORE, Plaintiff, Stacey Neff, demands judgment against the Defendants, Neuhoff Gallery, Inc. and Heidi Neuhoff International Fine Art, Inc., as follows: i) an award of damages at least in the amount of $2,478 plus interest from the date that purchase price proceeds were received by Defendants; ii) an award of damages in the amount of $19,000 for the conversion of seven works of art belonging to Plaintiff which have been converted by Defendants; iii) an award of damages in the amount of $37,400 for irreparable destruction of four works of art while in the custody of the Defendants; iv) for an amount to be determined at trial but no less than $15,000 plus interest for unauthorized sales; v) an order directing Defendants to deliver any and all works of art in its possession, custody, or control in the same condition in which the works existed when consigned; vi) an award of consequential damages in an amount to be determined at trial due to Plaintiff's inability to exhibit and sell the works which have not been returned; vii) an accounting for any additional monies owed to Plaintiff as a result of any acts by Defendants which would entitle Plaintiff to additional funds; viii) an award of punitive damages in the amount determined by the Court but in no event less than $50,000; and viii) any further relief that this Court may find just and proper, together with the costs and disbursements of this Action.

<u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.


Dated: New York, New York
      February 12, 2007

By:    _John B. Koegel_
   John B. Koegel

   THE KOEGEL GROUP LLP
   Attorneys for Plaintiff
   161 Avenue of the Americas
   New York, New York 10013
   Tel: (212) 255-7744
   Fax: (212) 337-1103

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

STACEY NEFF

                          Plaintiff,                    **Index No.**
                                                        **600444-07**

        -against-
                                                        **AFFIDAVIT OF**
                                                        **SERVICE**

NEUHOFF GALLERY, INC., and HEIDI NEUHOFF
INTERNATIONAL FINE ART., INC.

                          Defendants.

---

STATE OF NEW YORK)
COUNTY OF NEW YORK  } ss.:

Caswell Bryan, being duly sworn, deposes and says: I am not a party to this action, am
Over 18 years of age and reside at Yonkers, NY:

On February 13, 2007 at 3:00 p.m. at 41 East 57th Street, New York, NY 10022,
I served the within SUMMONS & COMPLAINT on NEUHOFF GALLERY, INC.,
defendant therein named, by delivering a true copy of same to HEIDI NEUHOFF,
President.

The person served is a white female, brown hair, 50-60 years old, 5'5"-5'7" in height,
135-145 pounds.

                                        Caswell Bryan
                                        ─────────────────
                                        Caswell Bryan
                                        License No. 846846

Sworn to before me this
13th day of February 2007.

Julio Delara
─────────────────
NOTARY PUBLIC

        JULIO DELARA
NOTARY PUBLIC-STATE OF NEW YORK
        No. 01DE6119206
    Qualified in New York County
Commission Expires November 29, 2008





139 Fulton Street, New York, NY 10038
Tel: 212-393-9070   •   800-393-1277   •   Fax: 212-393-9796

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

STACEY NEFF

                      Plaintiff,

    -against-

NEUHOFF GALLERY, INC., and HEIDI NEUHOFF
INTERNATIONAL FINE ART., INC.

                      Defendants.

**Index No.
600444-07**

**AFFIDAVIT OF
SERVICE**

---

STATE OF NEW YORK)
COUNTY OF NEW YORK } ss.:

Caswell Bryan, being duly sworn, deposes and says: I am not a party to this action, am
Over 18 years of age and reside at Yonkers, NY:

On February 13, 2007 at 3:00 p.m. at 41 East 57th Street, New York, NY 10022,
I served the within SUMMONS & COMPLAINT on HEIDI NEUHOFF
INTERNATIONAL FINE ART, INC., defendant therein named, by delivering a true
copy of same to HEIDI NEUHOFF, President.

The person served is a white female, brown hair, 50-60 years old, 5'5"-5'7" in height,
135-145 pounds.

**[FILED]**

FEB 1 4 2007

COUNTY CLERK'S OFFICE
NEW YORK

Caswell Bryan
License No. 846846

Sworn to before me this
13th day of February 2007.

NOTARY PUBLIC

JULIO DELARA
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DE6119206
Qualified in New York County
Commission Expires November 28 2008

*LegalEase Inc.*

139 Fulton Street, New York, NY 10038
Tel: 212-393-9070  •  800-393-1277  •  Fax: 212-393-9796