BRIAN D. LINDER (BL3581)
CLAYMAN & ROSENBERG
ATTORNEYS FOR DEFENDANTS
HEIDI NEUHOFF, HEIDI NEUHOFF INT'L FINE ARTS, INC.
AND HEIDI NEUHOFF GALLERY, INC.
305 MADISON AVENUE – SUITE 1301
NEW YORK, NEW YORK 10165
(212) 922-1080 phone
linder@clayro.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LB ARTS SPRL,

                         Plaintiff,
   –against –
                                                   08 Civ. 3726 (LAK)(RLE)

HEIDI NEUHOFF, individually, HEIDI NEUHOFF
INTERNATIONAL FINE ARTS, INC.,
NEUHOFF-EDELMAN GALLERY, LLC, HEIDI
NEUHOFF GALLERY, INC. and H.N.
GALLERY, INC.

                         Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF DEFENDANTS HEIDI NEUHOFF,
HEIDI NEUHOFF INTERNATIONAL FINE ARTS, INC.,
AND HEIDI NEUHOFF GALLERY INC. IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINT FOR
<u>FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................. i

Preliminary Statement ........................................................................................................... 1

The Allegations of the Complaint ......................................................................................... 1

ARGUMENT .......................................................................................................................... 2

POINT I        PLAINTIFF'S RICO CLAIM
SHOULD BE DISMISSED FOR FAILURE
TO STATE A CLAIM FOR WHICH RELIEF
MAY BE GRANTED ................................................................................. 2

POINT 2        PLAINTIFF'S COMMON LAW CLAIMS
SHOULD BE DISMISSED UNDER THE
MERGER DOCTRINE ............................................................................ 10

Conclusion ............................................................................................................................ 12

## TABLE OF AUTHORITIES

Page

**Federal Cases**

Asian Vegetable Research and Development Center v. Institute of Intern. Educ.,
944 F.Supp. 1169 (S.D.N.Y. 1996) ...............................................................................11

Bank v. Brooklyn Law School, 2000 WL 1692844 (E.D.N.Y. Oct. 6, 2000) ...............................6

Bates v. Northwestern Human Services, Inc., 466 F.Supp.2d 69 (D.D.C. 2006) .......................8

Bernstein v. Misk, 948 F.Supp. 228 (E.D.N.Y. 1997) .................................................................5

Cedar Swamp Holdings, Inc. v. Zaman, 487 F.Supp.2d 444 (S.D.N.Y. 2007) ............................6

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 121 S.Ct. 2087 (2001) ...................3, 8

D'Antonio v. Metropolitan Transp. Authority, 2008 WL 582354 (S.D.N.Y. 2008) ...................11

First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004) ..............5

Fitzgerald v. Chrysler Corp., 116 F.3d 225 (7th Cir. 1997) .....................................................3, 4

George Lussier Enterprises, Inc. v. Subaru of New England, Inc., 393 F.3d 36
(1st Cir. 2004) ..................................................................................................................4

Globe Wholesale Tobacco Distributors Inc. v. Worldwide Wholesale Trading Inc.,
2007 WL 2826630 (S.D.N.Y. 2007) ...............................................................................2

Hargrave v. Oki Nursery, Inc., 636 F.2d 897 (2d Cir. 1980) .....................................................11

Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc., 165 F.Supp.2d 514
(S.D.N.Y. 2001) ...............................................................................................................6

Newman v. Silver, 713 F.2d 14 (2d Cir. 1983) ..........................................................................11

Pavlov v. Bank of New York Co., 135 F.Supp.2d 426 (S.D.N.Y. 2001) .................................7, 8

Reves v. Ernst & Young, 507 U.S. 170, 113 S.Ct. 1163 (1993) ..................................................8

Schmidt v. Fleet Bank, 16 F.Supp.2d 340 (S.D.N.Y. 1998) ........................................................6

Stachon v. United Consumers Club, Inc., 1999 WL 971284 (N.D.Ill.1999) ..............................5

Stolow v. Greg Manning Auctions Inc., 258 F.Supp.2d 236 (S.D.N.Y. 2003) ..........................10

TeeVee Toons, Inc. v. Gerhard Schubert GmbH, 2006 WL 2463537 (S.D.N.Y. 2006) .............. 11

U.S. v. Tomero, 496 F.Supp.2d 253 (S.D.N.Y. 2007) .................................................................... 3

Williams v. Ford Motor Co., 11 F.Supp.2d 983 (N.D.Ill. 1998) ..................................................... 4

**State Cases**

Kurtz v. Lelchuk, 12 Misc.3d 1182(A), 824 N.Y.S.2d 763, 2006 WL 1982598
    (Sup. Ct. N.Y. Co. 2006) ........................................................................................................ 11

Nardiello v. Stone, 235 A.D.2d 681, 652 N.Y.S.2d 647 (3d Dep't 1997) .................................... 11

Vardi v. Mutual Life Ins. Co., 136 A.D.2d 453, 523 N.Y.S.2d 95 (1st Dep't 1988) ................... 10

**Statutes**

18 U.S.C. Sec. 1962 ............................................................................................................*passim*

Preliminary Statement

Defendants Heidi Neuhoff, Heidi Neuhoff International Fine Arts, Inc., and Heidi Neuhoff Gallery, Inc. (collectively the "Gallery") submit this memorandum in support of their motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff's RICO claim should be dismissed under Rule 12(b)(6) because there is no "enterprise" within the meaning of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. Sec. 1962, *et. seq.* ("RICO"). Plaintiff's common law tort claims, which merely recast plaintiff's contract claim in fancy dress, merge into her contract claim, meriting dismissal.

The Allegations Of The Complaint

The central allegation of the complaint, Exhibit A to the declaration of Brian D. Linder dated August 19, 2008, is that Hanneke Beaumont, a sculptress, working through her corporation, plaintiff LB Arts Sprl ("LB" or "Plaintiff"), consigned works of art to the Gallery and that the Gallery sold some of the works but failed to make timely payment to LB. LB also contends the Gallery failed to report its sales of LB's works, misinformed LB about what had been sold and when it was sold, made incorrect statements or reports concerning damage to certain LB works, and that the return of certain of Beaumont's unsold art works to LB was delayed. The complaint then undertakes to bootstrap this garden-variety contract dispute between a consignment seller and a retailer into a RICO case and alleges several different flavors of common law tort.

# ARGUMENT

## Point I

## PLAINTIFFS' RICO CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED

1.  <u>The Elements Of A Civil RICO Claim</u>

This is a garden variety breach of contract claim between the Gallery and an artist. It does not involve anything remotely approaching organized crime, yet LB's main claim is that defendants violated RICO. LB's objective is to use the threat a RICO claim poses to the Gallery's and Neuhoff's reputation and the exorbitant cost of defending a RICO claim to extract a settlement where nothing is owed. The elements of a civil RICO claim are well settled:

> To state a civil RICO claim, a plaintiff must allege "(1) a violation of the RICO statute, 18 U.S.C. § 1962 ; (2) an injury to the business or property; and (3) that the injury was caused by the violation of Section 1962 ." . . . Section 1962(c) provides in relevant part that it is unlawful "for any person employed by or associated with any enterprise ... to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity." In each case, the plaintiff must allege (1) an enterprise and (2) a pattern (3) of racketeering activity. The plaintiff must allege also that the conduct constituting a RICO violation caused injury to the plaintiff.

<u>Globe Wholesale Tobacco Distributors Inc. v. Worldwide Wholesale Trading Inc.</u>, 2007 WL 2826630, at *2 (S.D.N.Y. 2007)(notes omitted). LB has not pleaded a sustainable claim. It should be dismissed.

2.  <u>The "Distinctness" Requirement</u>

A RICO plaintiff must allege the existence of a criminal enterprise through which a criminal actor has committed RICO-predicate crimes, and she must show the RICO defendant was able to commit the predicate crimes owing to her position in the enterprise:

2

> To establish a pattern of racketeering activity, the government must prove that the defendant committed at least two predicate offenses that were "related to each other ('horizontal' relatedness), and ... to the enterprise ('vertical' relatedness)." To show vertical relatedness, the government must establish "(1) that the defendant 'was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise,' or (2) that 'the predicate offenses are related to the activities of that enterprise.' "

U.S. v. Tomero, 496 F.Supp.2d 253 (S.D.N.Y. 2007)(notes omitted).

A RICO plaintiff is also required to show that the alleged RICO person controlling enterprise activity is distinct from the enterprise. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 162, 121 S.Ct. 2087 (2001) (adopting distinctness requirement). The Seventh Circuit has laid out the test to determine if a RICO claim should go forward: Are the facts pleaded sufficiently close to a prototypical RICO case – especially with respect to the enterprise element and the distinctness requirement – to sustain a RICO claim.  The First Circuit has followed the Seventh.  The Second Circuit will surely follow when a suitable case is presented.

In the prototypical RICO case, the enterprise amplifies the ability of individual actors to engage in more widespread, damaging conduct than would be possible acting alone, without the enterprise to facilitate the crimes at issue.  The existence of such an enterprise through which the predicate acts are accomplished is a crucial component of plaintiff's case because, without it, all that would remain is a series of independent wrongs, which is not what RICO and its draconian remedies target – it targets organized crime and situations bearing a strong family resemblance to organized crime.

In Fitzgerald v. Chrysler Corp., 116 F.3d 225, 227-28 (7th Cir. 1997), plaintiffs alleged that Chrysler Corporation, its subsidiaries, trusts and dealers constituted an enterprise engaged in selling extended warranties to buyers of Chrysler vehicles, while intending not to honor the warranties.  Chrysler was the alleged RICO person and Chrysler's subsidiaries and dealers were

3

the alleged enterprise. Plaintiffs argued they had pleaded the enterprise element because the dealers were legally distinct entities, so the RICO enterprise and RICO person were distinct.

Applying what is sometimes referred to in RICO jurisprudence as the "family resemblance test," Judge Posner found no RICO claim:

> If Chrysler were even larger than it is and as a result had no agents, but only employees ... it could not be made liable for warranty fraud under RICO. <u>What possible difference, from the standpoint of preventing the type of abuse for which RICO was designed, can it make</u> that Chrysler sells its products to the consumer through franchised dealers rather than through dealerships that it owns.... <u>In the prototypical case . . . it is easy to see how the defendant gains additional power to do evil by taking over a seemingly legitimate enterprise</u>. . . [W]here a large, reputable manufacturer deals with its dealers and other agents in the ordinary way, so that their role in the manufacturer's illegal acts is <u>entirely incidental,</u> differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the <u>manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the statute.</u>

<u>Id</u>. at 227-28 (emphasis added).

The First Circuit, citing <u>Fitzgerald</u> and other authorities, has explained:

> [A]ppellants' civil RICO claim would also fail as a matter of law because they could not establish that SNE used an "enterprise" as a vehicle for racketeering, thus corrupting an otherwise lawful enterprise . . . <u>Far from a prototypical RICO enterprise</u>, . . . there is no evidence that SNE "was able to commit the predicate [racketeering] acts by means of, by consequence of, by reason of, by the agency of, or by the instrumentality of its association with the enterprise"- the Dealer Network. <u>Since SNE did not gain additional power to "racketeer" and engage in mail and wire fraud by "taking over" the Dealer Network, appellants' RICO claim fail as a matter of law</u>.

<u>George Lussier Enterprises, Inc. v. Subaru of New England, Inc</u>., 393 F.3d 36, 52 (1st Cir. 2004) (citations omitted)(emphasis added). <u>See also Williams v. Ford Motor Co</u>., 11 F.Supp.2d 983, 988 (N.D.Ill. 1998)(where a car dealer tacked its own high inspection fee to car owners

4

presenting their cars for warranty work under the manufacturer's warranty, claiming that Ford assessed the fee, the affiliation between the dealer and the manufacturer did not confer on the deal the "additional power to do evil")(RICO claim dismissed); Stachon v. United Consumers Club, Inc., 1999 WL 971284, at *5 (N.D.Ill.1999) (where the defendants did not commit fraud through the alleged enterprise, the "additional power to do evil" was not present and the situation was "too far removed from the prototypical RICO case to be sustainable").

3.   LB's Pleading Fails to Plead Sufficient Distinctness to Satisfy the Enterprise Element

For RICO purposes, Neuhoff Gallery and Heidi Neuhoff are one and the same person, and there is no meaningful distinction to be drawn between them despite the fact that they have separate legal identities. The reason is that Gallery, which is the purported "enterprise," did not "amplify" Heidi Neuhoff's ability, as the alleged RICO person, to engage in the RICO misconduct of which LB complains. LB does not allege that the enterprise gave Ms. Neuhoff "additional power" to engage in the predicate conduct at issue.

Plainly, Ms. Neuhoff, the individual, could have performed exactly the same alleged conduct with or without the Gallery entity. The Gallery added nothing to the ability of the alleged person to engage in RICO wrongdoing.

LB alleges no functional connection between the RICO person (Ms. Neuhoff), the Gallery (the RICO enterprise), and the complained of enterprise activity (the purported predicates). Where no functional connection is pleaded among these RICO elements, RICO claims have been dismissed. See, e.g., First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004)(dismissing enterprise allegations where plaintiffs failed to plead a nexus between the enterprise and the predicate acts, quoting Bernstein v. Misk, 948 F.Supp. 228, 235 (E.D.N.Y. 1997) ("The indifferent attempts to plead the existence of an enterprise . . .

5

frustrate assiduous efforts to identify its membership, its structure . . . , or its functional unity.")); Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc., 165 F.Supp.2d 514 (S.D.N.Y. 2001) (without the "functional integration" of a classic RICO enterprise, the complaint alleged a mere scheme to defraud). The complaint does not allege any "functional unity" – it just alleges a scheme to defraud. It does not allege a person acting "through an enterprise," but an enterprise that is incidental to the conduct at issue. It does not properly plead a RICO enterprise within the meaning of the RICO statute.

The functional integration requirement discussed in the cases above expresses the same concerns that the Seventh Circuit's prototype analysis does in the Fitzgerald progeny.

District courts within the Second Circuit have repeatedly dismissed RICO claims where the enterprise at issue does not meet functional integration concerns. See, e.g., Bank v. Brooklyn Law School, 2000 WL 1692844 (E.D.N.Y. Oct. 6, 2000) (complaint dismissed where it plaintiff failed to allege the enterprise existed as an entity separate and apart from the commission of alleged acts of mail and wire fraud and there was no allegation of the functional integration typical of RICO enterprises); Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 350 (S.D.N.Y. 1998) (RICO complaint failed for lack of allegation of functional integration).

In Cedar Swamp Holdings, Inc. v. Zaman, 487 F.Supp.2d 444, 452 (S.D.N.Y. 2007), this court explained and held:

> The . . . RICO statute was intended to cast a wide net. . . But . . . [this court] is not persuaded that the group constituting the alleged "enterprise" in this case is anything other than a laundry list of the individuals and entities that were connected to [defendants] and somehow involved in one of their alleged schemes. An enterprise . . . must be more than the sum of the participants in a series of independent frauds. [A]s the complaint states little more than garden variety fraud and breach of fiduciary duty claims -- assuming that Rule 9(b) is satisfied here -- plaintiffs have failed to state a RICO claim.

LB's claim against the Gallery is just a series of independent frauds perpetrated that it alleges against Ms. Neuhoff. The Gallery did not enable the conduct LB complains and it was not a "RICO enterprise" through which the questioned activity was conducted. The Gallery, as a corporation, was incidental and irrelevant to the criminal acts alleged because the RICO person did not need the Gallery to do what she is alleged to have done and it did not facilitate the conduct at all.

No functional integration typical of a the RICO prototype is alleged. In Pavlov v. Bank of New York Co., 135 F.Supp.2d 426, 429-30 (S.D.N.Y. 2001), this court held:

> [I]t is well in construing the term 'enterprise' to remember the statute's overriding purpose -- to create a weapon useful in combating organized crime. Congress quite plainly had in mind organizations with characteristics similar to those that have been documented in many organized crime trials . . . . [W]hile an 'enterprise' need not exhibit all of the characteristics of familiar criminal organizations, the Supreme Court long ago held that a RICO enterprise is a 'group of persons associated together for a common purpose of engaging in a course of conduct' that 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.' [I]t has a 'hierarchy, organization and activities' and it 'must exhibit structural continuity' which 'exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis.' (Notes omitted).

The enterprise/person/predicate relationship in this case lacks the characteristics of an organized crime entity engaged in a pattern of criminal acts. Because the "enterprise" LB pleads would add nothing to Ms. Neuhoff's ability to engage in the alleged wrongful conduct, the person and "enterprise" are not related in the manner required to exploit RICO's remedies.

This case is nothing more than a garden variety commercial dispute that bears no substantial family resemblance to the organized crime prototype that justified RICO's enhanced remedies. This does not support a RICO complaint:

7

> "a division of the defendants cannot be an "enterprise" because the "person" sued under RICO must be separate and distinct from the enterprise. . . The addition of the "corrupt members of Inkombank's senior management and Russian organized crime factions associated with them" . . . adds nothing because there is nothing in the complaint to suggest that the members of Inkombank's management, organized crime factions, and BNY together formed a unit with a structure, a hierarchy, or a continuity apart from whatever criminal acts they allegedly committed. To construe the statute to embrace this alleged enterprise would broaden its scope far beyond anything Congress ever imagined. Indeed, it would read the enterprise element out of the statute, or come perilously close to doing so, by making the association inherent in the commission of any pattern of crimes sufficient to make out an "enterprise.

Pavlov, 135 F.Supp.2d at 430-431 (notes omitted). Accord Bates v. Northwestern Human Services, Inc., 466 F.Supp.2d 69, 84 (D.D.C. 2006) (defendants are not distinct if one acts merely as a stand-in for the other) ("[RICO] liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their *own* affairs." Kushner, 533 U.S. at 163, 121 S.Ct. 2087; Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S.Ct. 1163 (1993).

4.  *Kushner's* Adoption of the "Separate Legal Identity Theory Does Save the Complaint

    Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 121 S.Ct. 2087 (2001) cannot

save the complaint. The sole question in Kushner was whether the separate legal existence of the corporation and its president satisfied the distinctness requirement or whether, as other cases held, the RICO person president would only be distinct from the corporation enterprise, if he was alleged to have acted beyond the scope of agency. Kushner held that the separate legal identities of the corporation and president rendered them distinct, regardless of scope of agency, but did not consider whether the RICO person and the RICO enterprise, in a particular case, might be so unlike the organized crime prototype as to fail to be sustainable as a RICO claim, as in Fitzgerald

8

and George Lussier Enterprises, and cases in this district focusing on the functional inter-relationship between the RICO elements expressing similar logic.

Although the separate legal identity of a corporate entity and its president may permit plaintiff to state an enterprise allegation on some pleading, this pleading is not one of them.

Kushner does not prevent a court from asking whether the alleged relationship among the alleged legally distinct person and enterprise is so far removed from the prototypical RICO case as to bar a RICO claim. Because LB has failed to plead the proper type of functional distinctness between the alleged RICO person and enterprise, its RICO claim should be dismissed.

The cases applying functional integration analysis and employing Judge Posner's prototype and family resemblance test have been applied to "association in fact" enterprises but not to a corporation enterprise run by its owner/president. The same rules, however, should apply. RICO's draconian remedies were not intended to apply to every case in which a series of frauds is alleged, but to cases where there is some type of organizational structure – whether it be a business entity or association -- that enhances the ability of the person allegedly controlling enterprise activity to engage in predicate wrongdoing. The mere pleading of involvement of a corporate entity enterprise does mean the corporation added anything meaningful to the capacity of the person charged with wrongdoing to engage in those activities, and that is what Judge Posner has clearly identified as the essence of the type of situation in which RICO may apply.

Whether analyzed in terms of "functional distinctness," in this district, or "family resemblance to a prototype," as in the Seventh and First Circuits, and whether applied to business entity enterprises or associations-in-fact enterprises, this pleading fails.

9

Because there is no allegation that the Gallery added anything to the capacity of the person accused of committing the predicates to do so, RICO is inapplicable. Accordingly, the tenth claim for relief should be dismissed.

**Point II**

**PLAINTIFF'S COMMON LAW CLAIMS SHOULD BE DISMISSED UNDER THE MERGER DOCTRINE**

Assuming the pleading to be true for purposes of this motion, the Gallery's obligation to LB, as consignor, was to comply with the terms of its consignment contract, a duty that LB states the Gallery breached. LB has pleaded common law tort laws, omitting a contract claim, trying to bootstrap a breach of contract claim into a tort claim to avoid the limitations imposed on contract recoveries. Its artful pleading strategy should be rejected for reasons stated below.

1.  LB's Tort Claims Should Be Dismissed Under the Merger Doctrine

Where an action is really breach of contract, a plaintiff may not assert a tort claim: the tort claims "merge" into the contract claim, and the tort claims are dismissed. E.g., Vardi v. Mutual Life Ins. Co., 136 A.D.2d 453, 456, 523 N.Y.S.2d 95, 98 (1st Dep't 1988) (tort claims were "thinly disguised efforts to transform contract claims into tort claims by the addition of tailored allegations, a practice frowned upon"); TeeVee Toons, Inc. v. Gerhard Schubert GmbH, 2006 WL 2463537, *17 (S.D.N.Y. 2006) (refusing to permit plaintiff to "transmogrify" its contract claim into a tort claim).

The central contention of LB's complaint is that the Gallery failed to pay, and to pay timely, for the artworks it sold. That is the only conduct that could have, arguably, damaged LB, and that is a contract claim. The facts fail to support a tort. E.g., Asian Vegetable Research and Development Center v. Institute of Intern. Educ., 944 F.Supp. 1169, 1181-82 (S.D.N.Y. 1996)(rejecting an attempt to transmogrify a breach of contract into a tort). LB should not be

10

permitted to turn this breach of contract into something it is not.  Nardiello v. Stone, 235 A.D.2d 681, 683-684, 652 N.Y.S.2d 647 (3d Dep't 1997) (rejecting claims for prima facie tort, negligence and fraud and limiting plaintiffs limited to breach of contract); Hargrave v. Oki Nursery, Inc., 636 F.2d 897, 899 (2d Cir. 1980) (yet another unsuccessful attempt to plead a breach of contract as a tort).

2.      LB's Failure To Plead A Contract Claim Does Not Defeat Merger

LB's apparently intentional failure to plead breach of contract while asserting its tort claims does not help disguise its real claim, and does not defeat merger.  Where a plaintiff's real claim is for breach, even if it is unpleaded, the courts imply the claim and dismiss the tort claims. E.g., D'Antonio v. Metropolitan Transp. Authority,  2008 WL 582354 (S.D.N.Y. 2008) ("the Court infers from the complaint a claim for breach of contract against [defendants] arising from their alleged breach of the [contract] by diverting money from the Funds"); Kurtz v. Lelchuk, 12 Misc.3d 1182(A), 824 N.Y.S.2d 763, 2006 WL 1982598 (Sup. Ct. N.Y. Co. 2006) ("The Court must infer that this action is one for breach of contract.").  The nature of claim is determined from the claim itself, not from the label a plaintiff appends to it.  See Newman v. Silver, 713 F.2d 14, 16 n.1 (2d Cir. 1983) (the nature of a pleading is determined by the claim, not by legal theories).  LB has not been injured in any regard by any tort violation since what it allegedly lost is identical to what may have been lost by virtue of any contract breach.  Its claims for late payment and nonpayment – what actually caused its alleged injury -- are fundamentally contract claims, nothing more.  All LB's tort claims should be dismissed for all the reasons stated above.

11

## Conclusion

For the foregoing reasons, the complaint should be dismissed for failure to state a claim for relief, with costs.

Dated:   New York, New York        CLAYMAN & ROSENBERG
       August  19, 2008           ATTORNEYS FOR DEFENDANTS
                                                HEIDI NEUHOFF,  HEIDI NEUHOFF INT'L
                                                FINE ARTS, INC. and HEIDI NEUHOFF
                                                GALLERY, INC.

                                                _____/s_____
                                                Brian D. Linder  (BL3581)
                                                305 MADISON AVENUE – SUITE 1301
                                                NEW YORK, NEW YORK 10165
                                                (212) 922-1080 phone
                                                linder@clayro.com